SENA E. ELLIOTT, Appellee, v. DANIEL D. HORTON, Appellant.

FEBRUARY 7, 1928.

*Burton Russell*, for appellant.

*George J. Dugan*, for appellee.

EVANS, J.—I. The record discloses that, on and long prior to Thanksgiving Day, 1925, the plaintiff was the owner of an inclosed field containing exactly 50 acres; and that upon this  property she and her husband had lived for many years. On the date named, and after a brief conversation, she orally sold said field to the defendant herein, at an agreed price of $200 per acre. On January 14th, she and her husband conveyed the tract of land to the defendant by warranty deed, which, however, contained an error of description. This error she later offered and sought to correct. The defendant went into possession of this tract of land under such deed, and has maintained such possession since. The trouble between the parties arose over the basis of settlement for the purchase price,—the defendant contending that the tract contained only 48.58 acres, and the plaintiff contending that it contained the full 50 acres. The

defendant's contention was predicated not upon any measurement or survey of the tract, but upon the language of the instrument which evidenced plaintiff's record title. This instrument was the will of the plaintiff's father, John Stuber, which contained the following devise:

"Item 4. To my daughter, Sena E. Elliott, I devise the north fifty (50) acres of the following described property, to wit: The north half of the southwest quarter, and the south sixty (60) acres of the northwest quarter of Section twenty (20), Township eighty-one (81) north, Range twenty-six (26), west of the 5th P. M., Iowa, less the Inter Urban Railway, the town of Moran, Stuber's First Addition to Moran, and any other parcels of the same which I may transfer, to be hers in fee simple, subject to the life use of my widow, Priscilla Stuber, and subject to the mineral rights on the same."

The phrase "less the Inter Urban Railway," contained in the foregoing devise, is relied on by the defendant in support of his contention; this contention being that the area of so much of the "Inter Urban Railway" as lay upon the north 50 acres should be deducted from plaintiff's acreage.

John Stuber died testate in 1920. All of his real estate was devised to his widow and to his four children, including plaintiff. His estate was fully administered and divided in purported pursuance of the will. All the beneficiaries of the estate construed the paragraph above quoted as giving to the plaintiff 50 acres exclusive of the "Inter Urban Railway." An engineer was mutually employed to measure and to survey the land for the purpose of division. He established the lines and corners so as to give to the plaintiff exactly 50 acres, exclusive of the interurban right of way. This survey was accepted by all the parties in interest, and the tract thus surveyed and awarded to plaintiff was fully inclosed by proper fences. These facts were fully known to the defendant at the time he made the purchase. He is a cousin of the plaintiff's, and owns the adjoining land, and has lived there substantially all his life. When the dispute first arose, the defendant took the position that the inclosed field of the plaintiff trenched upon the land of her sister, Gladys Benson, who took under the same will from her father. His first demand was for a quitclaim deed from Gladys Benson and her husband. This was immediately procured by the plaintiff

and tendered to him. But he then refused the same. Later, the plaintiff procured and tendered to the defendant relinquishments of all right and interest by every beneficiary of the John Stuber estate. The final attitude of the defendant has been that he purchased from the plaintiff only her own land, which she had acquired by the will of her father; and that he did not agree to buy from her any other land, even though she had acquired the same from her sister; and that, if she obtained from her sister or from the other beneficiaries a greater concession than was devised to her by the will of her father, he declined to purchase or pay for the same. He has thus made his contest, not upon any actual shortage in the acreage of the field possessed by the plaintiff and delivered to him, but upon the fact that she has no record title to more than 48.58 acres of land. This record leaves no room to doubt that the subject-matter of their oral bargain was the inclosed farm then occupied by the plaintiff; nor is there room to doubt that it contains 50 acres; nor that the plaintiff is now in possession of the 50 acres, and has been since March, 1926. The oral bargain was a conversation which dealt in no details concerning acreage or title. The defendant was already familiar with all the history of plaintiff's acquisition of the farm. He bought subject to a mortgage, which was to be deducted from the purchase price. The argument made for him here is that the plaintiff cannot compel him to accept and pay for real estate which she did not own at the time of the contract of sale. This argument quite misses the mark. He contends that he is not in possession of the disputed area. But this is argumentative only. He does have possession of the entire inclosure, and the evidence of its area is undisputed. The defendant may not retain the benefit of his bargain and still refuse payment.

The district court properly found the bargain of sale to be as contended by plaintiff, and held the defendant bound thereby.

II. We have already referred to the fact that the plaintiff delivered a deed on January 14, 1926, which she afterwards sought to correct. This deed was drawn by a scrivener, who  took his description from the records, and put his own construction upon them. He described therein the plaintiff's tract as containing 50 acres, "less the Inter Urban Railway." Though

the district court found for the plaintiff on this issue, it failed to incorporate into its decree a formal reformation of such deed. It did, however, prescribe in the decree a description of plaintiff's land by metes and bounds, which comprised 50 acres, exclusive of the interurban right of way. This provision of the decree necessarily worked a reformation of the original deed, quite regardless of a formal announcement to that effect. This, we think, quite answers the contention of the appellant that the original deed was not, in fact, reformed, and that the appellee was necessarily bound thereby.

III. The court taxed to the plaintiff all the costs of the trial up to February 25, 1927, because it found that neither the original deed nor the later deed tendered nor the quitclaim deeds from the other beneficiaries contained a strictly correct description of the plaintiff's farm. From this order the plaintiff has appealed. It appears from the record that a technically accurate description of the plaintiff's farm required a description by metes and bounds. The court prescribed such description in accord with the figures and measurements of an engineer, who originally surveyed the tract. It appears from a plat of the premises that the interurban right of way only crossed the ''north fifty (50) acres'' at its extreme southwest corner, leaving a quite negligible area on the west side of the right of way. By the acquiescence of all the parties in interest, the surveyor ran his lines so as to award to the plaintiff her full fifty acres without crossing the interurban right of way at all. This departure from a technically correct description had not been complained of in any manner by the defendant. On the contrary, he contended for the description contained in the original deed, which ignored that feature of the survey. In the controversy preceding the beginning of the suit, the plaintiff had repeatedly offered and tendered to the defendant full relinquishments from the other beneficiaries of the Stuber estate of any and all claim to any part of the tract possessed by the plaintiff. The defendant made his issue wholly upon unjustifiable grounds. There can be no doubt, upon this record, that,.if the defendant had indicated any objection to the description for want of metes and bounds, his objection would have been promptly complied with, as it was promptly complied with when imposed as a condition by the court. We are of the

opinion that the defendant got more than he was entitled to in the taxation of costs. Inasmuch as he has carried the controversy into this court, and appealed from a decree which was generous to him at this point, we cannot do otherwise than to consider the whole controversy *de novo*.

We think that he should pay all the costs of the litigation in both courts, and it is so ordered.—*Affirmed on defendant's appeal; reversed on plaintiff's appeal.*

STEVENS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.